STATE EX REL. EARL BYNUM *v.* THE LAPORTE
SUPERIOR COURT, NO. 1.

[No. 1172S158. Filed January 9, 1973.]

*Donald D. Martin,* of Michigan City, for relator.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for respondent.

PRENTICE, J.—This matter is before us upon the return of the respondent to the alternative writ of prohibition issued herein on November 20, 1972 and the relator's reply thereto, said writ directing the respondent to refrain, until the further

order of this Court, from proceeding further in exercising jurisdiction in causes numbered 4324 and 4325 of the respondent court, and to show cause why the said writ should not be made permanent.

The writ was issued on petition of Earl Bynum, relator, an inmate of the Indiana State Prison at Michigan City, LaPorte County, Indiana, which institution lies within the territorial jurisdiction of the respondent court, said relator having been committed in 1955, for the rest of his natural life, upon conviction of murder in the second degree. On May 1, 1972, Bynum was charged in the respondent court in two separate criminal causes, being the aforesaid causes numbered 4324 and 4325 and being, respectively, the commission of a felony while armed with a dangerous weapon and assault and batter with intent to kill alleged to have been committed in LaPorte County, where the respondent court sits. It is Bynum's position that he may not be removed from the prison to the respondent court for proceedings in said causes, by reason of the Acts of 1905, ch. 169, § 135, 1956 Repl. Burns Ind. Stat. Ann. § 9-1017, IC 1971, 35-1-20-2, which in applicable parts, is as follows:

> "A convict in any one of the prisons of the state, * * * against whom an indictment or affidavit for felony is pending, * * * may be removed to the county in which such * * * indictment or affidavit is pending, for * * * trial, * * *; *but no convict for life shall be so removed, unless * * * the indictment pending against him, is for treason or for murder in the first degree.*" (Our emphasis)

The respondent contends that the words "removed" and "so removed" refer to removal from the county rather than to removal from the prison. Under such an interpretation, the respondent could proceed in said causes unhampered by the statute, because to do so would not require his removal from the county. To hold otherwise, they assert, is to grant immunity from prosecution for crimes, other than treason and first degree murder, to prisoners under

life sentence and that such could not have been the legislative intent. We fear, however, that they confuse "legislative intent" with "legislative result," which, in spite of the utmost care and caution in drafting, are not always one and the same thing. None will dispute that in construing statutes, it is our duty to give effect to the plain and manifest meaning of the language used. This requires no citation of authority. In cases of ambiguity, we must search for legislative intent. If more than one construction is possible, the court may consider the consequences of a particular construction. *Hamilton* v. *Huntington* (1945), 223 Ind. 143, 58 N. E. 2d 349. Rehearing denied 223 Ind. 143, 59 N. E. 2d 122; *State ex rel. Fox* v. *Board of Commissioners of Carroll County* (1931), 203 Ind. 23, 178 N. E. 563. A consideration of attendant evils may properly influence the construction in such cases; *State* v. *Rice* (1956), 235 Ind. 423, 134 N. E. 2d 219; *Helms* v. *American Sec. Co. of Indiana* (1939), 216 Ind. 1, 22 N. E. 2d 822, and the court will endeavor to give the statute a practical application and to construe it in such a way as to oppose prejudice to public interest. *State* v. *Rice, supra; Helms* v. *American Sec. Co. of Indiana, supra; Lost Creek School Township, Vigo County* v. *York* (1939), 215 Ind. 636, 21 N. E. 2d 58, 127 ALR 128; *Town of Brownsburg* v. *Trucksess* (1933), 98 Ind. App. 322, 185 N. E. 315.

These considerations are to enable us to determine the legislative intent. Once having determined such intent, however, the ambiguity disappears, and we are no more at liberty to adopt a construction that will not give effect to such intent than we would be had there been no ambiguity in the first instance. This, notwithstanding that we may not approve its purpose or that we perceive undesirable side effects apparently not envisioned at the time of passage.

The obvious intent of the enactment under consideration was to assure the security of prisoners under life sentences

at a time when security and transportation facilities were limited and crude by today's standards. It, doubtlessly, was considered improvident to transport such persons beyond the walls of the institution and thus afford him a possible opportunity for escape, when the result of a conviction could only mean his return to the same institution from whence he came and the same status that he held before. Viewed in this light, the risk to be avoided was attendant to his removal from the institution and not to his removal from the county. We agree, with chagrin, that this interpretation puts life prisoners in a position to commit new crimes with impunity, and it is our opinion that at this date, sixty-seven years following the enactment, this consideration outweighs, in the public interest, the security risks which, in the meantime have been substantially reduced. But this is for legislative determination. We fear that in their understandable anxiety to avoid this unsatisfactory result, in the case at hand, the respondents have failed to follow their proposed construction through to a logical conclusion. To adopt their view that it is only removal from the county that is prohibited would permit authorities to prosecute persons under life sentences for new crimes, only if they were apprehended in and held in the county having venue. An inmate, under life sentence at the state prison, could be prosecuted if he committed another crime within the prison walls or escaped and committed another crime in LaPorte County. If, however, he escaped, committed another crime in any other county, was subsequently recaptured and returned to the prison, he would be immune from prosecution. We can not ascribe such an intent in view of the logical alternative.

It lies within the exclusive province of the legislature to alter legislation that apparently has outlived its usefulness, and we have no authority to emasculate it by judicial interpretation.

We hold that the relator may not be removed from the

Indiana State Prison to stand trial on the aforesaid charges pending in the respondent court and that the respondents are, therefore, without authority to proceed further therein. The alternative writ of prohibition issued on November 20, 1972 to said respondents is, accordingly, hereby made permanent.

DeBruler, Givan and Hunter, JJ., concur; Arterburn, C.J., dissents.

NOTE.—Reported in 291 N. E. 2d 355.